IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BOARD OF TRUSTEES, SHEET )
METAL WORKERS' NATIONAL )
PENSION FUND, *et al.*, )
 )
          Plaintiffs, ) Civil Action No. 1:09cv1050 (TSE/JFA)
 )
v. )
 )
LIBERTY SIGNS NY, INC., )
 )
          Defendant. )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). (Docket no. 9). Plaintiffs are the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund ("SMWIASF") and the Sheet Metal Occupational Health Institute Trust ("SMOHIT") and they seek a default judgment against defendant Liberty Signs NY, Inc. ("Liberty"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all parties.

### Procedural Background

On September 16, 2009, the plaintiffs filed this action alleging that Liberty is obligated to pay them for certain overdue contributions, liquidated damages, interest and late charges. (Docket no. 1). A summons was issued for the complaint on September 16, 2009. (Docket no.

3). The summons and complaint were served on the owner and CEO of Liberty by personal service on October 17, 2009. (Docket no. 5). In accordance with the version of Fed. R. Civ. P. 12(a) applicable at the time of service, a responsive pleading was due on November 6, 2009, twenty days after Liberty was served with the summons and complaint.

Liberty failed to file a responsive pleading in a timely manner and, on November 9, 2009, the plaintiffs filed their request for entry of default. (Docket no. 6). The Clerk entered default against Liberty pursuant to Fed. R. Civ. P. 55(a) on November 9, 2009. (Docket no. 7). On November 11, 2009, the plaintiffs filed a motion for default judgment with a supporting memorandum and declarations from Walter Shaw and Dawn M. Costa and a notice of hearing for December 18, 2009 at 10:00 a.m. (Docket nos. 9-11). The motion for default judgment, supporting memorandum and notice of hearing were served on Liberty by mail on November 11, 2009. (Docket nos. 9-11). On December 18, 2009, counsel for the plaintiffs appeared at the hearing on the motion for default judgment and no one appeared on behalf of Liberty.

## Factual Background

The following facts are established by the complaint (Docket no. 1), the motion for default judgment and the declarations filed in support of the motion for default judgment (Docket nos. 9, 10).

NPF is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 4). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee pension benefit plan" within the meaning of

29 U.S.C. §§ 1002(37) and (3). (Compl. ¶ 4). The NPF is administered in Alexandria, Virginia. (Compl. ¶ 8).

ITI is the collective name of the trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 5). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 5). The ITI is administered in Alexandria, Virginia. (Compl. ¶ 8).

SMWIASF is the collective name of the trustees of the Sheet Metal Workers' International Association Scholarship Fund, a trust established under 29 U.S.C. § 186(c)(5). (Compl. ¶ 6). The trustees are the "named fiduciary," plan "administrator" and "plan sponsor" within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), and each is an individual "fiduciary," within the meaning of 29 U.S.C. § 1002(21), of a "multiemployer plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §§ 1002(37) and (1). (Compl. ¶ 6). The SMWIASF is administered in Alexandria, Virginia. (Compl. ¶ 8).

SMOHIT is the collective name of the trustees of the Sheet Metal Occupational Health Institute Trust, a trust established under 29 U.S.C. § 186(c)(5) that is a joint labor-management health and safety organization serving the sheet metal industry. (Compl. ¶ 9).

Liberty is a New York corporation and is an employer in an industry affecting commerce as defined by 29 U.S.C. §§ 152(2), (6) and (7), and 1002(5), (11) and (12). (Compl. ¶ 12). Liberty has a place of business in Lindenhurst, New York. (Compl. ¶ 12).

3

Liberty employs employees represented for the purposes of collective bargaining by the Sheet Metal Workers' International Association and/or one or more of its affiliated local unions, which are labor organizations representing employees in an industry affecting interstate commerce (collectively, the "Union"). (Compl. ¶ 13). Liberty was a party to or agreed to abide by the terms and conditions of a collective bargaining agreement with the Union (the "Labor Contract"). (Compl. ¶ 14). Liberty also entered into or agreed to abide by the terms of the agreements and declarations of trust with the NPF, ITI and SMWIASF (the "Trust Agreements") made between certain employers and employee representatives. (Compl. ¶ 15).

Under the Labor Contract and the Trust Agreements, Liberty agreed to make full and timely contributions to the plaintiffs on behalf of employees who were covered by those agreements; to file monthly remittance reports detailing all employees or work for which contributions were required; to produce, upon request, all books and records deemed necessary to conduct an audit of Liberty's records concerning its obligations to make payments to the plaintiffs; and to pay liquidated damages, late charges, interest, audit costs, and all costs of litigation expended by the plaintiffs to collect any amounts due as a consequence of Liberty's failure to comply with its obligations detailed above. (Compl. ¶ 16). Plaintiffs allege that payments due to them are calculated separately for each of them on remittance reports that are required to be prepared monthly by each contributing employer. (Compl. ¶ 17). A complete report and payment must be submitted by the twentieth day of each month following the month in which the work was performed, and are deemed delinquent if such payment and report are not received within that time period. (Compl. ¶ 18).

Under the Labor Contract, Trust Agreements, NPF Rules and Regulations, other benefit plans and/or applicable law, Liberty is required to pay the plaintiffs interest on any delinquent

4

contributions at a rate of eight and one-half percent (8.5%) per annum; late charges equal to the greater of fifty dollars ($50.00) for each month of contributions paid after the due date, and before any lawsuit is filed, or ten percent (10%) of the contributions due for those months; liquidated damages equal to the greater of interest on all delinquent contributions or twenty percent (20%) of the contributions that were unpaid on the date the lawsuit was filed or which have become delinquent subsequent to such filing; and all attorney's fees and costs incurred by the plaintiffs as a result of Liberty's failure to comply with its obligations. (Compl. ¶¶ 19, 20).

In Count I, for Liberty's violation of 29 U.S.C. § 1145, NPF, ITI and SMWIASF seek a judgment in the amount of $13,996.72 plus any amounts that become due and owing during the pendency of this litigation together with late charges, interest from the due date until the date of payment, liquidated damages, and reasonable attorney's fees and costs incurred in this action or the collection or enforcement of any judgment. (Compl. ¶¶ 23, 24). In Count II, for Liberty's breach of contract, the plaintiffs seek a judgment in the amount of $14,034.32 plus any amounts which become due and owing during the pendency of the litigation together with liquidated damages, interest, and attorney's fees and costs incurred in this action or the collection or enforcement of any judgment. (Compl. ¶¶ 27, 28).

In the motion for default judgment, the NPF and ITI state that they are owed the amounts as detailed below under Count I for violation of 29 U.S.C. § 1145.[1]

---

[1] The difference in the amounts sought in the motion for default judgment (Docket no. 10, Exhibits 5(a) and (b)) and the complaint (Docket no. 1, Ex. 2) is in the complaint the interest is calculated up to and including August 31, 2009, and in the motion for default judgment the interest is calculated up to and including November 13, 2009, and the contribution amounts in the motion for judgment have been adjusted downward to correct a data entry error. (Docket no. 10 pg. 5). The motion for default judgment also contains an itemization of the attorney's fees and costs sought.

5

| Plaintiff | Contributions | Interest through 11/13/2009 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| NPF | $11,370.91 | $387.76 | $2,274.14 | $3,601.78 | $17,634.59 |
| ITI | $24.85 | $0.85 | $4.94 | | $30.64 |
| SMWIASF | $15.29 | $0.51 | $3.02 | | $18.82 |
| Total | $11,411.05 | $389.12 | $2,282.10 | $3,601.78 | $17,684.05 |

In the motion for default judgment, the plaintiffs state that they are owed the amounts as detailed below under Count II for breach of contract.

| Plaintiff | Contributions | Interest through 11/13/2009 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| NPF | $11,370.91 | $387.76 | $2,274.14 | $3,601.78 | $17,634.59 |
| ITI | $24.85 | $0.85 | $4.94 | | $30.64 |
| SMWIASF | $15.29 | $0.51 | $3.02 | | $18.82 |
| SMOHIT | $30.62 | $1.05 | $6.09 | | $37.76 |
| Total | $11,441.67 | $390.17 | $2,288.19 | $3,601.78 | $17,721.81 |

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment.

A defendant in default admits the factual allegations in the complaint. See Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a

responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

The plaintiffs allege that this court has subject matter jurisdiction under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. ERISA Section 502 provides that U.S. district courts have jurisdiction over civil actions brought under this title. This case is properly before the court under its federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) since it is brought under ERISA for an alleged failure to make contributions in accordance with a collective bargaining agreement or multi-employer plan. The plaintiffs further allege that this court has subject matter jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). That section provides that U.S. district courts have jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. This case is also properly before the court pursuant to 29 U.S.C. § 185(a) since it is brought under the LMRA for violation of a contract between an employer and a labor organization.

ERISA Section 502 states that an action under this title may be brought in the "district where the plan is administered" and "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The plaintiffs state that they are

administered in Alexandria, Virginia. (Compl. ¶ 8). On October 17, 2009, the summons and complaint were served in person on the owner and CEO of Liberty. (Docket no. 5). Venue is proper in this court and this court has personal jurisdiction over the defendant since the plaintiffs are administered within the Alexandria Division of the Eastern District of Virginia. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040 (E.D. Va. 1997) (personal jurisdiction in an ERISA action should be determined on the basis of the defendant's national contacts with the United States pursuant to the due process Clause of the Fifth Amendment and ERISA itself provides for nationwide service of process).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendant and that venue is proper in this court.

### Grounds for Entry of Default

The complaint was served in person on the owner and CEO of Liberty on October 17, 2009. (Docket no. 5). Under the version of Fed. R. Civ. P. 12(a) applicable at the time the summons and complaint were served, a responsive pleading was due on November 6, 2009, twenty days after the complaint had been served on the defendant. After the defendant failed to file an answer or responsive pleading in a timely manner, the plaintiffs requested an entry of default on November 9, 2009. (Docket no. 6). The Clerk of the Court entered a default on November 9, 2009. (Docket no. 7).

The undersigned magistrate judge recommends a finding that the defendant was served properly, that it failed to file a responsive pleading in a timely manner and that the Clerk properly entered a default as to the defendant.

## Liability and Measure of Damages

According to Rule 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because the defendant did not file a responsive pleading and is in default, it admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6).

### Count I

As set forth in the complaint, Liberty failed to submit remittance reports and contributions to the NPF, the ITI and the SMWIASF for the period from March 2009 through July 2009. (Compl. ¶ 23). Specifically, 29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In support of their claim for damages under Count I, the NPF, the ITI and the SMWIASF submitted a declaration from Walter Shaw. (Docket no. 10, Ex. 1). Mr. Shaw is the Manager of Billing and Eligibility for the NPF, and is familiar with the payment histories of employers obligated to make contributions to the NPF, the ITI, the SMWIASF and the SMOHIT. (Shaw Decl. ¶ 1). The information contained in the declaration of Mr. Shaw submitted on behalf of the NPF, the ITI and the SMWIASF establishes that Liberty owes at least $17,634.59 to the NPF, which includes $11,370.91 in unpaid contributions for the period March 2009 through July 2009; interest of $387.76 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; liquidated damages of $2,274.14 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions; and costs and attorney's fees of $3,601.78. (Shaw Decl. ¶ 7, Docket no. 10, Ex. 5(b)).

Liberty also owes at least $30.64 to the ITI, which includes $24.85 in unpaid contributions for the period March 2009 through July 2009; interest of $0.85 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; and liquidated damages of $4.94 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Docket no. 10, Ex. 5(b)).

Liberty also owes at least $18.82 to the SMWIASF, which includes $15.29 in unpaid contributions for the period March 2009 through July 2009; interest of $0.51 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; and liquidated damages of $3.02 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Docket no. 10, Ex. 5(b)).

The NPF submitted a declaration from Dawn M. Costa detailing the attorney's fees and costs incurred in this action. (Docket no. 10, Ex. 6). The total amount of the attorney's fees and costs incurred was $3,601.78. The $2,990.00 in attorney's fees is comprised of 16.3 hours of attorney time and 0.8 hours of paralegal time, and the amount of costs was $611.78, which is comprised of photocopy fees, service fees, filing fees and postage charges. (Docket no. 10, Costa Decl. ¶ 2, Ex. 7). The hourly rates charged for the attorney time was $180.00 and the hourly rate for the paralegal was $70.00. (Costa Decl. ¶ 3). The undersigned magistrate judge has reviewed the declaration of Ms. Costa and recommends a finding that the amount requested for attorney's fees and costs by the NPF is reasonable.[2]

---

[2] The Costa declaration does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-23 (4th Cir. 2008), *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) and *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) for establishing a reasonable fee award. While it includes exhibits indicating regional associate hourly billing rates and a survey of Ohio hourly billing rates from 2007, the relevant inquiry is whether the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community; here, Northern Virginia. *Plyler*, 902 F.2d at 278. However, since the defendant has not contested the requested amount of fees in this case, the court will accept the allegations set forth by the NPF concerning

For these reasons the undersigned magistrate judge recommends that a default judgment be entered in favor of the Board of Trustees of the Sheet Metal Workers' National Pension Fund; the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry; and the Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund against Liberty on Count I of the complaint for violation of 29 U.S.C. § 1145 in the amounts shown below:

| *Plaintiff* | *Contributions* | *Interest through 11/13/2009* | *Liquidated Damages* | *Costs and Attorney's Fees* | *Total* |
|---|---|---|---|---|---|
| NPF | $11,370.91 | $387.76 | $2,274.14 | $3,601.78 | $17,634.59 |
| ITI | $24.85 | $0.85 | $4.94 | | $30.64 |
| SMWIASF | $15.29 | $0.51 | $3.02 | | $18.82 |
| Total | $11,411.05 | $389.12 | $2,282.10 | $3,601.78 | $17,684.05 |

**Count II**

In Count II plaintiffs allege that Liberty has not paid them as required by the Labor Contract. (Compl. ¶ 27). They claim that Liberty owes them at least $14,034.32 under the Labor Contract. (Compl. ¶ 28). Specifically, 29 U.S.C. § 185(a) provides that

> suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

---

the reasonableness of these fees as true. The total amount of the fees and costs requested are consistent with fees and costs incurred in similar cases and awarded by this court.

29 U.S.C. § 185(a). The differences between the amounts sought in Count I and this Count is the claim for damages by the SMOHIT. (*See* Docket no. 10, Ex. 5(a) and 5(b)).

As an initial matter, plaintiffs have standing to seek relief for breach of contract under the LMRA as third-party beneficiaries of the collective bargaining agreement. *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. DCI Signs & Awnings, Inc.*, 2008 WL 4329294 at *5 (E.D. Va. Sept. 15, 2008)(citing *Bakery and Confectionary Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021-22 (4th Cir. 1997)).

In support of their claim for damages under the Labor Contract, the NPF, the SMOHIT, the ITI and the SMWIASF rely upon the declaration of Walter Shaw and a Delinquency Calculation Summary, as discussed in Count I, above. (Docket no. 10, Ex. 5(a)). The NPF seeks the same total recovery of $17,634.59, including $11,370.91 in unpaid contributions for the period March 2009 through July 2009; interest of $387.76 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; liquidated damages of $2,274.14 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions; and costs and attorney's fees of $3,601.78. (Docket no. 10, Ex. 5(a), Shaw Decl. ¶ 7).

The ITI seeks the same $30.64 award as in Count I, which includes $24.85 in unpaid contributions for the period March 2009 through July 2009; interest of $0.85 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and

Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; and liquidated damages of $4.94 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Docket no. 10, Ex. 5(a)).

The SMWIASF seeks the same $18.82 award as in Count I, which includes $15.29 in unpaid contributions for the period March 2009 through July 2009; interest of $0.51 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; and liquidated damages of $3.02 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Docket no. 10, Ex. 5(a)).

Under the breach of Labor Contract claim, Liberty owes at least $37.76 to SMOHIT, which includes $30.62 in unpaid contributions for the period March 2009 through July 2009; interest of $1.05 calculated pursuant to Article V, Section 2(c) of the Pension Trust Documents and Section III(A) of the Policies and Procedures for Collection of Contributions, at a rate of 8.5% per annum from the date the payment was due through November 13, 2009; and liquidated damages of $6.09 on the contributions unpaid at the commencement of litigation calculated at a rate of 20% pursuant to Article V, Section 2(c) of the National Funds' Trust Document and Section III(B) of the Policies and Procedures for Collection of Contributions. (Compl. Ex. 1; Docket no. 10, Ex. 5(a)).

As in Count I, the NPF claims $3,601.78 in attorney's fees and costs under this count and it relies upon the declaration of Dawn Costa in support of its claim for, and the reasonableness of, the attorney's fees and costs in this count. (Docket no. 10, Ex. 6). The undersigned magistrate judge has reviewed the declaration of Ms. Costa as discussed above and recommends a finding that the amount requested for attorney's fees and costs by the NPF is reasonable.

For these reasons the undersigned magistrate judge recommends that a default judgment be entered in favor of the Board of Trustees of the Sheet Metal Workers' National Pension Fund; the Board of Trustees of the International Training Institute for the Sheet Metal and Air Conditioning Industry; the Board of Trustees of the Sheet Metal Workers' International Association Scholarship Fund; and the Sheet Metal Occupational Health Institute Trust against Liberty on Count II of the complaint for breach of contract in the amounts shown below:

| Plaintiff | Contributions | Interest through 11/13/2009 | Liquidated Damages | Costs and Attorney's Fees | Total |
|---|---|---|---|---|---|
| NPF | $11,370.91 | $387.76 | $2,274.14 | $3,601.78 | $17,634.59 |
| ITI | $24.85 | $0.85 | $4.94 | | $30.64 |
| SMWIASF | $15.29 | $0.51 | $3.02 | | $18.82 |
| SMOHIT | $30.62 | $1.05 | $6.09 | | $37.76 |
| Total | $11,441.67 | $390.17 | $2,288.19 | $3,601.78 | $17,721.81 |

**The amounts sought by the NPF, the ITI and the SMWIASF in Count II are the same as the amounts sought in Count I and those plaintiffs are entitled to only one recovery for the amounts sought. For that reason, the undersigned magistrate judge**

15

recommends a total judgment be entered against the defendant in favor of the plaintiffs in the amount of $17,721.81 with interest from the date of judgment until paid.

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Liberty Signs NY, Inc. at 150A West Hoffman Avenue, Lindenhurst, NY 11757, and 568 North Wellwood Avenue, Lindenhurst, NY 11757, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 22nd day of December, 2009.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia